IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUBY'S FUDDRUCKERS RESTAURANTS, LLC | § § § | |
| *Plaintiff* | § § | |
| v. | § § | |
| VISA INC., VISA U.S.A, INC., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, MASTERCARD INTERNATIONAL INCORPORATED, BA MERCHANT SERVICES LLC, BANK OF AMERICA CORPORATION, BARCLAYS BANK OF DELAWARE, CAPITAL ONE, N.A., CAPITAL ONE BANK (USA), N.A., CAPITAL ONE FINANCIAL CORPORATION, CHASE BANK USA, N.A., JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO., CITIBANK, N.A., CITIGROUP, INC., FIFTH THIRD BANCORP, FIRST NATIONAL BANK OF OMAHA, HSBC FINANCE CORPORATION, HSBC NORTH AMERICA HOLDINGS, INC., PNC FINANCIAL SERVICES GROUP, INC., SUNTRUST BANKS, INC., SUNTRUST BANK, TEXAS INDEPENDENT BANCSHARES, INC., WELLS FARGO & COMPANY, AND WELLS FARGO MERCHANT SERVICES, LLC | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CASE NO. 4:17-cv-01049 |
| *Defendants* | § | |

**<u>PLAINTIFF LUBY'S FUDDRUCKERS' MOTION TO REMAND</u>**

TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................. 2

STANDARD OF REVIEW .................................................................. 5

ARGUMENT ..................................................................................... 6

    A.   Remand Is Required Because The Edge Act Does Not Provide
       Federal Subject Matter Jurisdiction Over This Suit ............................ 6

       1.  This Suit Does Not "Arise Out Of" Anything "International"
          Or "Foreign" ........................................................................ 6

       2.  This Suit Does Not Arise Out Of Traditional Banking Or
          Financial Operations .......................................................... 15

       3.  This Suit Does Not Arise Out Of Foreign Banking
          Transactions Or Financial Operations Specifically By
          Edge Act Corporations…………………………………………..18

    B.   Remand Of These Purely State Law Claims Is Also Warranted
       Because Luby's Has Disclaimed Any Damages Related
       to Purchases with a Foreign Issued Card……………………………19

CONCLUSION .................................................................................. 21

CERTIFICATE OF CONFERENCE..................................................... 23

CERTIFICATE OF SERVICE ............................................................. 23

i

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Am. Int'l Group v. Bank of Am. Corp.*,
  712 F.3d 775 (2d Cir. N.Y. 2013) ...............................................................18

*Bank of Am. Corp. v. Lemgruber*,
  385 F. Supp. 2d 200, 215 n.13 (S.D.N.Y. 2005) .....................................17, 18

*Bank of N.Y. v. Bank of Am*,
  861 F.Supp. 225 (S.D.N.Y. 1994) .............................................................16

*Bosky v. Kroger Tex., L.P.*,
  288 F.3d 208 (5th Cir. 2002) .......................................................................5

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) .........................19, 21

*Diaz v. Pan American Federal Savings and Loan Association*,
  635 F.2d 30 (1st Cir. 1980)..........................................................................16

*Highland Crusader Offshore Partners, L.P. v. Lifecare Holdings, Inc.*,
  627 F. Supp. 2d 730 (N.D. Tex. 2008)....................................................13, 14

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) ........................................................................5

*Jana Master Fund, Ltd. v. J.P. Morgan Chase & Co.*,
  490 F.Supp.2d 325 (S.D.N.Y. 2007) .............................................................6

*Landesbank Baden-Wurttemberg v. Capital One Fin. Corp.*,
  2013 U.S. Dist. LEXIS 99970, 7-8 (S.D.N.Y. July 177-8, 14, 2013)... 7-8, 14

*Lazard Freres & Co. v. First Nat'l Bank*,
  91 Civ. 0628(KMW), 1991 WL 221087, 1991 U.S. Dist.
  LEXIS 14665, at *3 (S.D.N.Y. Oct. 15, 1991) ...............................................8

*New Mexico ex rel. Foy v. Vanderbilt Capital Advisors, LLC*,
  2009 U.S. Dist. Lexis 105528, 17-19 (D.N.M. Apr. 13, 2009)..................5, 6

*Nicodemus v. Union Pacific Corp.*,
    440 F.3d 1227 (10th Cir. 2006) ........................................................5

*Pinto v. Bank One Corp.*,
    2003 WL 21297300 (S.D.N.Y. June 4, 2003) ...........................8, 9, 10, 12, 15

*Ritchie Capital Mgmt., L.L.C. v. JP Morgan Chase & Co.*,
    532 B.R. 461 (S.D.N.Y. 2014) .................................................14, 15

*Sealink Funding Ltd. v. Bear Stearns & Co.*,
    2012 U.S. Dist. LEXIS 145418, 16 (S.D.N.Y. Oct. 9, 2012) .............8, 12, 14

*Sollitt v. Key Corp.*,
    463 Fed. Appx. 471 (6th Cir. Ohio 2012) ...................................6, 12, 13, 17

*Stamm v. Barclays Bank of N.Y.*,
    960 F. Supp. 724 (S.D.N.Y. 1997) .................................................17

*Syngenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002).......................................................................5

*Telecredit Service Center v. First Nat'l Bank*,
    679 F.Supp. 1101 (S.D. Fl. 1988)............................................8, 10, 11, 13, 16

*U.S. ex rel. Holmes*
    318 F.3d at 1216 .........................................................................5

*Willy v. Coastal Corp.*,
    855 F.2d 1160 (5th Cir. Tex. 1988).................................................5

*Wilson v. Republic Iron & Steel Co.*,
    257 U.S. 92 (1921).......................................................................5

**STATUTES**

12 U.S.C. § 632...........................................................3, 5, 6, 13, 16

28 U.S.C. §1447(c)-(e)....................................................................2

FRCP 15(a)(1)..............................................................................20

iii

Plaintiff Luby's Fuddruckers Restaurants, LLC ("Plaintiff" or "Luby's") files this Motion to Remand pursuant to 28 U.S.C. §1447(c)-(e) and respectfully requests that this action be remanded to the 152nd Judicial District Court for Harris County, Texas for the following reasons:

## INTRODUCTION

The Defendants' removal of this action is unreasonable and unfounded. They have predicated their removal exclusively on the Edge Act, an attempt that has already been carefully and thoughtfully rejected by the Southern District Texas Federal Court in a factually identical case. See *Speedy Stop Food Stores, LLC, v. Visa, Inc.*, No. 6:13-CV-73, slip op. at 7-10 (S.D. Tex. Dec. 26, 2013) (declining Edge Act jurisdiction and remanding the same state antitrust claims regarding the same Defendants' collusively setting supracompetitive interchange fees and imposing competitive restraints on merchants who accept Visa and MasterCard) (Exhibit A).

The Defendants have not cited any new authority to support changing the well established law in order to expand application of the Edge Act to a circumstance in which it has never applied. Rather, the pertinent facts and law continue to confirm that the Edge Act does not support federal jurisdiction over this case. As Luby's Petition makes clear, Luby's owns and operates restaurants in Texas. Its customers

2

purchase meals at Luby's restaurants located in Texas. Some of those customers pay with a credit card or debit card, and when they do, Luby's incurs what it has alleged are excessive fees for using a non-bank entity's network – Visa or MasterCard. Luby's alleges that the Defendants have violated the Texas Free Enterprise and Antitrust Act of 1983 by colluding in the United States to fix prices and impose anticompetitive restraints related to Luby's acceptance of credit and debit cards at Texas restaurants when using a non-banking network such as Visa or MasterCard. See Plaintiff's Original Petition at ¶¶1-13.

By contrast, for the Edge Act to ground federal jurisdiction, the case must "***aris[e] out of transactions involving international or foreign banking***, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations…." 12 U.S.C. § 632. (emphasis added). The alleged anticompetitive conduct here does not qualify as the sort of traditional banking or financial operations, indeed international such operations, as are contemplated by the Edge Act. There is not a hint of any international involvement in the matters alleged in the Petition.

Even if there were any international or foreign banking aspect of a few fortuitous credit card purchases involving a Texas consumers at a Texas restaurant, such as the Defendants have suggested without any support in the four corners of

Plaintiff's Petition, any such instances would be far too incidental and removed from the subject of this suit to be considered to "arise[e] … out of international or foreign banking … or foreign financial operations" under the Edge Act. Whether a customer uses a foreign issued card to purchase a meal in Texas is not only nowhere to be found in Luby's pleadings, it is immaterial to Luby's claims. Moreover, the Edge Act Corporation Defendants (Defendants organized under the laws of the United States such as federally chartered banks) could not have been involved in the type of supposed international banking or financial operations that Defendants claim occurred (purchase with a Texas customer's foreign bank-issued credit card). At most, even according to what the Defendants have suggested, only Defendants Visa and MasterCard, which are not Edge Act Corporations, transacted with allegedly foreign credit card issuing banks.

As if that were not enough, Luby's clearly is not a foreign entity, has not filed suit against any foreign defendants, and does not seek any of the miniscule damages possibly related to a few credit card purchases at its restaurants that Defendants allege involve a credit card issued by a non-party foreign bank. Luby's Petition provides no basis for federal jurisdiction and this Court should remand these purely state law claims against non-Edge Act and non-diverse defendants.

4

## STANDARD OF REVIEW

Courts strictly construe the removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *New Mexico ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, 2009 U.S. Dist. Lexis 105528, 17-19 (D.N.M. Apr. 13, 2009) (finding "more than a 'scintilla of doubt' as to whether the transactions out of which this lawsuit arises are sufficiently international to meet the requirements of 12 U.S.C. § 632. *See U.S. ex rel. Holmes*, 318 F.3d at 1216. The presumption against federal jurisdiction, therefore, defeats Defendants' assertion of jurisdiction under 12 U.S.C. § 632.") (citations omitted); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (because the jurisdiction of the federal courts is limited, a federal court must presume that a suit falls outside its jurisdiction.).

The burden of establishing federal jurisdiction is placed upon the party seeking removal. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Moreover, the removing party is limited to relying on the allegations in the Plaintiff's petition to satisfy the burden. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. Tex. 1988) (citations omitted); *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (noting that the basis for federal jurisdiction must appear on the face of the petition); *Sollitt v. Key Corp.*, 463 Fed. Appx. 471, 472 (6th Cir. Ohio

2012) (federal jurisdiction, pursuant to 12 U.S.C. § 632, must be evident on the face of the complaint); *Jana Master Fund, Ltd*. *v. J.P. Morgan Chase & Co.*, 490 F.Supp.2d 325, 329 (S.D.N.Y. 2007) (recognizing the plaintiff is the master of his complaint and that the Court must limit its review to the plaintiff's pleadings in assessing jurisdiction under 12 U.S.C. § 632); *New Mexico ex rel. Foy*, 2009 U.S. Dist. Lexis at *17 (regarding an Edge Act removal in particular, "[T]he Court must decline Defendants' invitation to look outside the four corners of the Complaint to ascertain the origin of the securities in question.").

The Defendants' bald allegations outside the four corners of the Plaintiff's Petition are improper and fall far short of satisfying their heavy burden to establish that federal jurisdiction applies.

## **ARGUMENT**

**A.   Remand Is Required Because The Edge Act Does Not Provide Federal Subject Matter Jurisdiction Over This Suit**

### **1.   This Suit Does Not "Arise Out Of" Anything "International" Or "Foreign"**

The Defendants' suggestion that Luby's state law antitrust claims arise from international banking or foreign financial operations does not pass removal muster. There is nothing in Luby's pleadings that addresses international banking or foreign financial operations, and the Defendants do not and cannot cite any specific

allegation by Luby's to the contrary. Collusion through directors on boards for non-banking entities (Visa and MasterCard) to fix fees and impose competitive restraints when using a non-banking company's network does not constitute an "offshore banking transaction."

Instead, the Defendants strain to allege, outside Luby's own pleadings, that federal jurisdiction applies, simply because a tiny fraction of credit card purchases at Luby's stores were supposedly made using credit cards issued by non-party foreign banks. (Doc. #1, Notice of Removal at ¶19(b)) Defendants do not cite any controlling, authoritative opinion to support removal and give their back hand to the United States Southern District of Texas opinion in *Speedy Stop Food Stores v. Visa, Inc.* That opinion is directly on point and rejected Edge Act jurisdiction in a case involving identical facts. The Defendants also ignore the numerous authorities cited in the *Speedy Stop* remand order. The *Speedy Stop* Court thoroughly considered and rejected the same Edge Act theory presented by Defendants here, because "the offshore transaction components of the allegedly triggering transactions are not the subject of this case. The involvement of any foreign banks is fortuitous and legally insignificant to Speedy Stop's lawsuit." *Speedy Stop*, 6:13-CV-73, slip op. at 8 (citing *Landesbank Ba-Den–Württemberg v. Capital One Financial Corp.*, No. 12 Civ. 5907(MGC), --- F.Supp.2d ---, 2013 WL 3743161 (S.D.N.Y. July 17, 2013);

7

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397(LTS)(HBP), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012); *Pinto v. Bank One Corp.*, No. 02 Civ.8477 NRB, 2003 WL 21297300 (S.D.N.Y. June 4, 2003); *Lazard Freres & Co. v. First Nat'l Bank*, 91 Civ. 0628(KMW), 1991 WL 221087, 1991 U.S. Dist. LEXIS 14665, at *3 (S.D.N.Y. Oct. 15, 1991), and *Telecredit Serv. Ctr. v. First National Bank*, 679 F.Supp.1101, 1104 (S.D.Fla. 1988)) (Exhibit A).  There is no reason for this Court to change course to expand Edge Act jurisdiction in this same case.

In purported support of their far-fetched predicate for removal, Defendants again cite an unpublished, outdated New York opinion for the proposition that the supposed credit card transactions involving foreign banks are sufficient to confer federal jurisdiction under the Edge Act. (Doc. #1, Notice of Removal at p. 8) (citing *Pinto v. Bank One Corp.*, 2003 WL 21297300 (S.D.N.Y. June 4, 2003)).

As before in *Speedy Stop*, *Pinto* remains distinguishable on its face. The plaintiff in *Pinto* alleged loans advanced to him through his credit card account at Capital One and that were used for international internet gambling were illegal and uncollectible. *Pinto*, 2003 WL 21297300, at *2. In considering application of the Edge Act, the *Pinto* Court was careful to point out the difference between a credit card issuing bank, on the one hand, and a merchant/acquiring bank, on the other hand, and concentrated its analysis on the "location of the entities that processed

8

Pinto's internet gambling charges." *Id.* (referring to the merchant/acquiring banks). The Court found the plaintiff's gambling loans at issue were processed by a foreign merchant/acquiring bank. *Id.* at *3 – 4. Not only that, but the plaintiff expressly alleged that the loans were uncollectable because he used the funds to facilitate "offshore gambling." *Id.* at *2. The *Pinto* Court therefore concluded that "the claims **stem directly from** transactions that are themselves international." *Id.* at 19. (emphasis added). The *Pinto* Court also found the advances at issue qualified as banking, because the "suit arises out of … the extension of loans through credit cards and the collection of those loans." *Id.* at *4.

There is nothing "direct" about Defendants' effort to connect their Edge Act allegations with Luby's pleadings here. In true conclusory and unsupported fashion, Defendants baldly assert, "The Petition also alleges actions by Defendants that constitute financial operations under the Edge Act," but then cite only the *Pinto* opinion's reference to the pleadings in *that* case which involved a foreign merchant bank/acquiring bank. (See Doc. #1, Notice of Removal at p. 8) (describing Luby's Petition but citing *Pinto*'s reference to the foreign merchant Bank of Bermuda Ltd. that cleared Pinto's charges). Defendants could not cite Luby's live pleadings here, because they do not refer to any foreign transactions, much less transactions that involve a foreign merchant bank or acquiring bank such as in *Pinto*.

In addition to *Speedy Stop* and *Pinto,* the only other case found by the undersigned that has considered the applicability of the Edge Act in a suit involving credit card transactions is *Telecredit Service Center v. First Nat'l Bank*, 679 F.Supp. 1101 (S.D. Fl. 1988). Like the *Speedy Stop* Court, the *Telecredit* Court rejected federal jurisdiction under the Edge Act. *Telecredit* was a credit card servicer that earned a fee on every credit card transaction it cleared on behalf of a defendant bank. *Id.* at 1102.  The parties disputed whether *Telecredit* could earn a fee from the bank on certain chargebacks resulting from fraudulent foreign purchases. *Id.* The *Telecredit* Court held:

> The potential liability ***does not stem from*** the supposed foreign aspect of the transaction, but from the alleged fraud of the domestic corporations. One could hardly say that the nature of the transaction was a transaction involving international banking merely because the service being purchased was to be consumed in a foreign land.

*Id.* at 1104. (emphasis added).

Similarly, here, the Defendants' antitrust liability regarding consumer purchases in Texas restaurants could hardly be considered to stem from anything "foreign." *Id.* In fact, non-banks Visa and MasterCard impose a separate fee for international transactions, above and beyond the supracompetitive interchange fee at issue in this suit. Visa has applied an international service assessment (ISA) fee of 40 basis points (0.40%) and an international acquirer fee (IAF) of 45 basis points

(0.45%) on all credit and debit card transactions involving a U.S. merchant and a card issued outside of the U.S.  MasterCard has applied a cross boarder fee of 40 basis points (0.40%) and an acquirer program support fee of 55 basis points (0.55%) above the interchange rate on similar transactions. To be clear, Luby's has not alleged anything related to, or arising from, these international fees.

The *Telecredit* Court also thoughtfully warned that the defendant's arguments for broad federal jurisdiction would create a slippery slope. The warning is even more applicable here, because the slope in this case is far more slippery than in *Telecredit*, which involved fees earned from a federally chartered bank on foreign purchases from a foreign merchant. If federal jurisdiction were to apply here just because a few purchases were allegedly made from Luby's restaurants using an international credit card, then any cancelled purchase, chargeback, fee or even a personal injury related to purchasing a meal in the United States, sold by a United States' merchant, and consumed in the United States, would become subject to federal jurisdiction simply because a non-party purchaser used a credit card that was issued by a non-party foreign bank. *Id.* ("The court finds this argument stretches the statute well beyond what Congress intended, and well beyond what has been considered a traditional banking activity.").

11

To paraphrase the New York Southern District, "The fact that [Luby's] ultimately decided to sell [food] to foreign entities [customers using foreign issued credit cards] could well have been fortuitous as far as Chase Bank was concerned. That decision was also far downstream from Chase Bank's participation in the packaging of RMBS [from agreeing to apply supracompetitive interchange fees on purchases in Texas]." *Sealink Funding Ltd. v. Bear Stearns & Co.*, 2012 U.S. Dist. LEXIS 145418, 16 (S.D.N.Y. Oct. 9, 2012).  The *Sealink* Court went on to hold, post-*Pinto*, that "for Edge Act jurisdiction to attach, there must be a direct nexus between the bank and the foreign activity." *Id.* (citations omitted).

The Sixth Circuit has also plainly rejected the anything-remotely-foreign test espoused by the Defendants here. In *Sollitt v. Key Corp.*, 463 Fed. Appx. 471 (6th Cir. Ohio 2012), the Appellate Court explained:

> There are, to be sure, cases asserting that "a suit satisfies the jurisdictional requisites of Section 632 <u>if any part of it</u> arises out of transactions involving international or foreign banking." <u>Pinto v. Bank One Corp</u>., No. 02 Civ. 8477, 2003 WL 21297300 at *3 (S.D.N.Y. June 4, 2003) (emphasis added; editorial marks omitted) (quoting <u>In re Lloyd's Am. Trust Fund Litig</u>., 928 F. Supp. 333, 338 (S.D.N.Y.1996)). **We are reluctant to subscribe to such an inherently limitless view.** Suppose, for example, that Sollitt had tripped and fallen over a stack of carelessly placed printouts of foreign-currency transactions. This meager association—ridiculous as it is—between the potential negligence claim and the foreign banking transaction that generated the printouts, would appear to suffice for Edge Act jurisdiction under so limitless a view. That cannot be correct.

*Id.* at 473-474 (emphasis added).

The reasoning of *Telecredit* and *Sollitt* make sense in light of the plain language of the Edge Act, which requires "arising out of," not simply "including" or "involving." 12 U.S.C. § 632. The statute uses both phrases "arising out of" and "involving." Where it means the one, it uses the one; where it means the other, it uses the other. And there is a difference. Here, at most, the Defendants have alleged (without support) a small degree of "involving." That is not what the Edge Act requires for federal jurisdiction. For that purpose, the Edge Act uses "arising out of." Thus, applying basic rules of statutory construction, each of those different terms must be given its own meaning and the "arising out of" reference may not be rendered superfluous or as carrying no different meaning from "involving." In addition, the Defendants' interpretation of the statute requires unilaterally inserting the phrase "if any part of it" that is simply not in the statute. Luby's respectfully requests this Court refrain from imposing a similarly garbled reading of the statute.

*Highland Crusader Offshore Partners, LP v. LifeCare Holdings, Inc.*, 627 F.Supp.2d at 730 (N.D. Tex. 2008), cited by the Defendants, is inapposite.  In *Highland*, a foreign plaintiff conceded that its lawsuit arose out of an international credit agreement. *Id.* at 732-733. The court, not surprisingly then, found Edge Act jurisdiction applied to the traditional credit transaction to which a foreign plaintiff

13

was a party. *Id.* at 735. Luby's, however, is not foreign nor a party to any contract with a foreign party, much less a banking contract such as a lending agreement. Luby's does not allege that it has a relationship at all with foreign parties. Moreover, *Highland* was decided before the Sixth Circuit (2012), Second Circuit (2013), and more recent New York District Court opinions such as *Sealink Funding* (2012) and *Landesbank Baden-Wurttemberg v. Capital One Fin. Corp.*, 2013 U.S. Dist. LEXIS 99970, 7-8 (S.D.N.Y. July 17, 2013) clarified the narrow scope of the Edge Act.

Defendants citation to *Ritchie Capital Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 532 B.R. 461 (S.D.N.Y. 2014) is also easily distinguishable. (Doc. 1, Notice of Removal at ¶23). Defendants cite *Ritchie* for their proposition that "even an incidental connection to offshore banking is sufficient to confer jurisdiction." (Id. at ¶23). The citation to *Ritchie* for support of such a notion is absurd. The *Ritchie* Bankruptcy Court found Edge Act jurisdiction based on repeated and explicit allegations in the plaintiff's complaint regarding federally chartered banks entering bank account agreements with foreign entities. The *Ritchie* Court stated:

> Because Plaintiffs' allegations of aiding and abetting and fraud implicate **numerous foreign or international banking transactions** by JPMC, the present action 'arises out of' those transactions. … **In the present case, banking activities predominate and are legally significant**. The Complaint alleges not only that JPMC aided and abetted Petters' frauds by transferring money through its many [foreign] accounts, but also that it acted contrary to **bank regulatory and compliance requirements**.

14

*Id.* at 468-469 (emphasis added). The Defendants have not cited any, much less "numerous", foreign or international banking transactions by federally chartered banks in Luby's pleadings. And there are none. Even assuming Luby's allegations included references to foreign issued credit cards, which Luby's Petition does not, they could not possibly be considered "legally significant" to the state antitrust claims at issue here. Luby's also clearly has not alleged anything related to bank regulations or compliance requirements as was the case in *Ritchie*. *Ritchie* does not support federal jurisdiction here – it confirms that remand is required.

### 2.    This Suit Does Not Arise Out Of Traditional Banking Or Financial Operations

The out-dated authority on which the Defendants primarily rely, *Pinto*, at least concedes that Edge Act jurisdiction requires "an international or foreign transaction which falls within the realm of those 'characterized as traditional banking activities.'" *Pinto*, 2003 WL 21297300 at * 8-9 (citations omitted). While *Pinto* found issuing and administering credit cards to cardholders to be a traditional banking activity, Luby's does not complain about how any non-party foreign bank deals with its credit card or debit card customers as the plaintiff did in *Pinto*. And, regarding a credit card service company's suit against a federally chartered bank, the *Telecredit* Court found that "…defendant's petition [is] too tenuous to constitute a

15

traditional banking transaction as contemplated by Congress in 12 U.S.C. § 632. Rather, the court views the nature of the transaction at issue, i.e., the allocation of risk with respect to fraudulent chargebacks, as a contractual dispute between the parties." *Telecredit*, 679 F.Supp. at 1104; also see *Bank of N.Y. v. Bank of Am*, 861 F.Supp. 225, 232-233 (S.D.N.Y. 1994) (Even though the Court acknowledged the suit arose out of a failed loan transaction, it remanded the suit because the case "present[ed] no banking law issues," but was essentially a contractual dispute as to whether the parties had reached a binding commitment).

The First Circuit's opinion in *Diaz v. Pan Am. Fed. Savings and Loan Assoc.,* 635 F.2d 30 (1st Cir. 1980) is also instructive.  Rejecting federal jurisdiction under the Edge Act, the First Circuit reasoned, "[Diaz] would . . . have us . . . read the word 'banking' expansively to include [Pan American]'s filing of a criminal  complaint based on the alleged passing of bad checks. We decline to read the term 'banking' so broadly."  *Id.* at 31.  The *Diaz* Court further clarified that the transaction at issue did not qualify as traditional banking even though Diaz's malicious prosecution claim could be traced back to Diaz's bounced checks, which all parties conceded were traditional banking transactions. *Id.* at 32.  In the same way, the Defendants here would have the word "banking" include colluding to fix excessive fees and anticompetitive rules for accepting Visa and MasterCard in Luby's restaurants just

16

because they say they can trace some unidentified restaurant purchases back to foreign banks that issued credit cards to customers.

The Edge Act's additional provision for federal removal jurisdiction – if the case arises "out of other international or foreign financial operations" – is likewise circumscribed. The Sixth Circuit remarked in *Sollitt*:

> The statute is otherwise limited to cases arising from 'transactions' and 'other . . . financial operations' of banking institutions. We think that this limited range of companion parts of the same statutory section militates in favor of a similar narrow limitation for the term 'banking'. Moreover, a commonsense approach to a statute principally concerned with financial transactions of an international character suggests that 'banking' includes only traditional banking activities. As was the district court, we are unable to believe that Congress intended to reach all cases in which a bank is a party. If Congress so intended, it could have stated its intent more easily.

*Sollitt*, 463 Fed. Appx. at 475 (quoting *Diaz*, 635 F.2d at 31-32); See also *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 215 n.13 (S.D.N.Y. 2005) (noting that the "common meaning" of "finance" is "to supply with funds through the issuance of stocks, bonds, notes or mortgages") (internal quotation marks and citation omitted); *Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 728 (S.D.N.Y. 1997) (stating that "financial operations" are "commonly understood as" those operations that "provide ... capital or loan money as needed to carry on business") (internal quotation marks and citation omitted).

The authorities uniformly reject the overly expansive reading of the terms

17

"banking" and "foreign financial operations" that would be required to include setting fees and rules for a restaurant's use of a non-banking entity's network such as Visa and MasterCard. Luby's respectfully urges the Court to refrain from imposing such an expansive and distorted reading of the statute.

### 3.    This Suit Does Not Arise Out Of Foreign Banking Transactions Or Financial Operations Specifically By Edge Act Corporations

Even if this Court were to conclude that this suit arises out of international and traditional banking transactions or foreign financial operations, which it should not, that is insufficient to confer federal jurisdiction under the Edge Act. The Second Circuit has further curtailed broad application of the Edge Act by courts such as *Bank of Am. Corp. Lemgruber*, 385 F.Supp.2d 200, 214 (S.D.N.Y. 2005) cited by the Defendants. (Doc. #1, Notice of Removal at ¶17).  In *Am. Int'l Group v. Bank of Am. Corp.*, 712 F.3d 775 (2d Cir. N.Y. 2013), the Second Circuit found that the only reasonable interpretation of the Edge Act also requires that an Edge Act corporation (federally chartered) defendant have directly participated in the foreign, traditional banking activities. *Id.* at 784. The Court of Appeals held, "the suit must arise out of an offshore banking or financial transaction of that federally chartered corporation." *Id.*  Defendants contention that this holding somehow confirms that a lawsuit's mere incidental connection to offshore banking is sufficient to confer jurisdiction is insupportable. (Doc. #1, Notice of Removal at ¶23). The *AIG* opinion does not say

18

anything of the sort.  Rather, it underscores that that the suit must "arise out of" and be "relat[ed] to the activities the Act seeks to promote, to wit, the banks' engagement in offshore banking transactions." *Id.* at 781.

Luby's credit and debit card acquiring bank never engages in "offshore banking transactions," even in the event of a supposed foreign-issued credit card purchase, because Luby's acquiring bank's engagement is limited to dealing with Luby's, on the one hand, and Visa or MasterCard, on the other hand, all in the United States. (See Doc. #1, Defendants' Notice of Removal at ¶6) ("The transaction is 'settled' when the issuing bank transfers funds to [Visa/MasterCard], [Visa/MasterCard] transfers funds to the merchant acquirer, and the merchant acquirer pays the merchant.").

**B.    Remand Of These Purely State Law Claims Is Also Warranted Because Luby's Has Disclaimed Any Damages Related to Purchases with a Foreign Issued Card**

In the alternative to the Court's remanding this suit for lack of original subject matter jurisdiction, which it should do, Luby's respectfully requests that the Court remand the remaining exclusively state law claims pursuant to *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (Allowing plaintiff to amend its pleading to delete federal question claims and approving subsequent discretionary remand).

19

Luby's has amended its Petition to expressly disclaim any damages related to attenuated purchases via credit or debit card issued by a non-party foreign bank. See FRCP 15(a)(1) (providing for amendment as a matter of course); See Am. Compl. at ¶161 ("From 2004 to the present, Plaintiff has accepted Visa-branded and MasterCard-branded credit and debit cards at its restaurants and sues only for antitrust injuries related to purchases by customers using credit and debit cards issued to them in the United States."). Even assuming Defendants' tangential international allegations warrant federal jurisdiction under the Edge Act, which they do not, any conceivable connection to Luby's actual claims does not exist.

While disclaiming or dismissing allegedly federal question claims does not require remand, it is discretionary and is appropriate here. In light of (a) a solely state law issue (the Texas Free Enterprise and Antitrust Act of 1983), (b) the local nature of this dispute (Luby's paying supracompetitive interchange fees for Visa and MasterCard sales in Texas), (c) the existence of non-diverse Texas defendant Texas Independent Bancshares, and (d) dismissal at an early stage of the litigation, the case belongs in state court. The United States Supreme Court explained:

> [A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. **When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped**

20

**out of the lawsuit in its early stages and only state-law claims
remain,** the federal court should decline the exercise of jurisdiction by
dismissing the case without prejudice.

*Cohill*, 484 U.S. at 350 (emphasis added).

## CONCLUSION

Luby's respectfully requests that this Court remand this suit to the 152nd
District Court in Harris County, Texas for lack of federal subject matter jurisdiction.
The Edge Act does not apply here, because the suit does not arise out of transactions
involving traditional international banking or foreign financial operations by a
federally chartered defendant bank. Luby's claims do not implicate offshore banking
or banking laws in any way. This is a Texas state antitrust case involving collusion
over fees and rules related to accepting Visa and MasterCard at restaurants. In the
alternative, Luby's respectfully requests that the Court decline to exercise
supplemental jurisdiction over the claims that do not involve foreign issued cards.
Especially considering the long-standing and strong preference for limited federal
jurisdiction and remand, this suit should be sent back to state court.

Respectfully submitted,

BURDINE WYNNE LLP

  */s/ David E. Wynne*
David E. Wynne (Attorney-in-Charge)
Texas Bar No. 24047150
Federal Bar No. 566468
1021 Main Street, Suite 1275
One City Centre
Houston, Texas 77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)
dwynne@burdinewynne.com

***Attorneys for Plaintiff***

**OF COUNSEL:**

Scott G. Burdine
Texas Bar No. 03368900
Federal Bar No. 10148
Kenneth R. Wynne
Texas Bar No. 22110000
Federal Bar No. 00837
BURDINE WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston TX 77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)
kwynne@burdinewynne.com
sburdine@burdinewynne.com

22

## CERTIFICATE OF CONFERENCE

The undersigned as conferred with counsel for the HSBC Defendants who confirmed that all of the Defendants were opposed to the relief requested in this matter.  The parties have been unable to agree to the disposition of this motion.

*/s/ David E. Wynne*
David E. Wynne

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the ***Motion to Remand*** has been served on all counsel electronically through the court's ECF noticing system on this the 7th day of April, 2017.

*/s/ David E. Wynne*
David E. Wynne

23