# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SPEEDY STOP FOOD STORES, LLC, | § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 6:13-CV-73 |
| VISA, INC., *et al*, | § § § | |
| Defendants. | § § | |

## ORDER GRANTING MOTION TO REMAND

Before the Court is Plaintiff's Motion to Remand (D.E. 30). Plaintiff filed this case to challenge, pursuant to the Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Comm. Code § 15.01 *et seq.*, the Defendants' interchange fees associated with Visa and MasterCard transactions. D.E. 1-2. Defendants removed the case to this Court on the basis of the Edge Act, 12 U.S.C. § 611 *et seq.*, as being brought against a federally chartered bank, involving international banking or international financial operations. For the reasons set out below, the Motion to Remand (D.E. 30) is GRANTED.

## THE EDGE ACT AND REMOVAL

The Edge Act was passed, *inter alia*, to "provide for the establishment of international banking and financial corporations operating under Federal supervision with powers sufficiently broad to enable them to compete effectively with similar foreign-owned institutions in the United States and abroad . . . ." 12 U.S.C. § 611a. Among the stated purposes are "a means of financing international trade" and fostering "the participation by regional or smaller banks throughout the United States in the provision

1 / 10

of international banking and financing services to all segments of United States agriculture, commerce, and industry," including small business and farming. *Id.*

Congress provided for original jurisdiction over suits involving the transactions and operations of such banking corporations in the federal courts and granted them the power to remove such state actions against them to federal court. *Id.*, § 632. The Edge Act removal provision prescribes "following the procedure for the removal of causes otherwise provided by law." *Id.*; *see also* 28 U.S.C. § 1446. The qualifications for removal to federal court under the Edge Act appear to be fairly simple:

1. It must be a civil suit;

2. A "corporation organized under the laws of the United States" (a federally chartered corporation) must be a party; and

3. The suit must arise out of offshore transactions or operations.

Edge Act, § 632; *American International Group, Inc. v. Bank of America Corp.*, (AIG) 712 F.3d 775, 780 (2nd Cir. 2013). With respect to the first requirement, the Edge Act more specifically provides for removal of "all suits of a civil nature at common law or in equity . . . ." 12 U.S.C. § 632. This phrase has been interpreted to include removal of actions brought exclusively pursuant to a state statute, such as the Texas Antitrust Act at issue here. *Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235 (11th Cir. 2000). The second requirement regarding the federally chartered status of a party is straightforward.

The conflict among cases construing Edge Act removal centers around the interpretation of its reference to the specific claims that are made removable—those that

"arise out of:"

> [1] transactions involving international or foreign banking, or [2] banking in a dependency or insular possession of the United States, or out of [3] other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries . . . .

Edge Act, § 632. Some courts have held that those "offshore banking transactions" need only comprise some, albeit incidental, part of the case. *E.g.*, *Highland Crusader Offshore Parners, L.P. v. LifeCare Holdings, Inc.*, 627 F.Supp.2d 730, 734-36 (N.D. Tex. 2008) (it is enough for the transaction to involve a banking issue—the legal claim need not); *Bank of America Corp. v. Lemgruber*, 385 F.Supp.2d 200, 214 (S.D.N.Y. 2005) (international transaction is sufficient even if the claim does not involve a banking issue).

Those cases, applying § 632 on its face, find a basis for federal jurisdiction in any case involving a federally chartered bank that also involves a tangential international or banking component. However, after a more complete review of constitutional limits on federal jurisdiction, the grammatical construction of the removal provision, and the overall purpose of the Edge Act to provide federal oversight of international trade, the Second Circuit arrived at a much more restricted interpretation of Edge Act jurisdiction. It held, "§ 632 provides that in order for its grant of federal jurisdiction and removability to apply, the suit must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction of that federally chartered corporation." *AIG, supra* at 784. This Court will apply the Edge Act as requiring that three-part nexus between the federally chartered bank, the banking or financial

transaction, and the offshore component.

Because the jurisdiction of the federal courts is limited, a federal court must presume that a suit falls outside its jurisdiction. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Removal requirements are strictly construed against federal jurisdiction and in favor of remand, with all doubts resolved against removal. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). On a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Maguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

## PLAINTIFF'S CLAIMS

In its Original Petition, upon which this case was removed, Plaintiff Speedy Stop Food Stores, LLC (Speedy Stop) describes in detail the procedure by which Visa and MasterCard payment cards are used. In summary terms, it involves a card-issuing bank (issuing bank) on behalf of the customer and an "acquiring bank" on behalf of the merchant. After the initial transaction between the merchant and customer is approved, the issuing bank forwards the customer's payment through the Visa or MasterCard network to the acquiring bank. The interchange fees at issue are charged by the issuing bank and payment of the interchange fee is effectuated by the acquiring bank, who forwards to the merchant the customer's payment, less the interchange fee.

Speedy Stop complains of a number of competitive restraints in the Visa and MasterCard systems that allegedly "tie its hands" from negotiating the most favorable

terms while still making the system work profitably for all parties. In particular, Speedy Stop complains that there is a conspiracy by which the interchange fees are set so as to avoid market competition both (a) between Visa and MasterCard and (b) between issuing banks. D.E. 1-2, pp. 28-29. Because Visa and MasterCard require that a merchant must "honor all cards," a merchant is bound to accept payment cards with high interchange fees as well as those with lower interchange fees. D.E. 1-2, pp. 29-30. Under the "all outlets rule," a merchant who accepts payment cards at one location must honor them at all of its locations. D.E. 1-2, pp. 30-31. Through the "no discount" and "no surcharge" rules, merchants cannot offer customers incentives to use other payment methods or pass along any part of the interchange fee to the customer. D.E. 1-2, pp. 31-32.

Last, Speedy Stop complains of the "Visa and MasterCard duality," by which issuing banks may issue both types of cards, acquiring banks may acquire transactions on both types of cards, and the same interests, including particular participating banks, are represented on the governing boards of both Visa and MasterCard, resulting in an elimination of any real competition between the systems. D.E. 1-2, pp. 32-38. Ultimately, Speedy Stop complains, these forces work together to prevent competition, resulting in an all-or-nothing take-it-or-leave-it dilemma for merchants who ultimately bear artificially high fees associated with a customer's use of the payment card systems.

Speedy Stop contends that it "sues only for antitrust injuries suffered in stores located in Texas." D.E. 1-2, p. 44. It has sued over thirty (30) Defendants, including Visa International Service Association and MasterCard International Incorporated, challenging this alleged conspiracy to, or "consortium of competitors" who, set and

maintain artificially high, non-competitive interchange fees for transactions initiated and completed in its Texas stores.

## DISCUSSION

This action is a civil action, which satisfies the first requirement of Edge Act removal. With respect to the second requirement, the Notice of Removal suggests that the Defendants include three federally chartered banks with transactions containing a foreign component: Bank of America, N.A., HSBC Bank USA, N.A., and Wells Fargo Bank, N.A., which serve as acquiring banks. D.E. 1, p. 8. While Speedy Stop argues that Defendants have not met their burden of proof regarding the federal status of these banks, it does not go so far as to deny it. Furthermore, Plaintiff's Original Petition notes that "Bank of America, N.A. is a national banking association." D.E. 1-2, p. 11.

A plaintiff is the master of his pleading and the determination of removability is generally constrained to the well-pleaded complaints made within the four corners of the pleading. *E.g., Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012). However, when a court is evaluating its own jurisdiction, it may look to readily available evidence to interpret the claims made in the pleading. *See generally, Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994) (Foreign Sovereigns Immunity Act case); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (addressing improper joinder). In such an inquiry, the court may take judicial notice of authoritative governmental websites. *See, e.g., Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005)

(taking judicial notice of Texas agency's website).

Each of the three banks at issue is listed as a national bank on the website of the Office of the Comptroller of the Currency.[1] National banks are formed under the laws of the United States. *See generally*, 12 U.S.C. §§ 21, 25b. Thus the second requirement for removal—the involvement of a federally chartered bank—is satisfied.

With respect to the third requirement, Defendants must show that the suit "arises out of" an offshore banking or financial transaction engaged in by one of the three identified national banks. Speedy Stop's pleading does not challenge any specific offshore transaction by any specific national bank. Instead, Speedy Stop has attempted to limit its lawsuit to the act of setting interchange fees for only transactions that take place in its stores in Texas.

Defendants have submitted affidavits to demonstrate that some of the Texas transactions that set the stage for this action have offshore transaction components. D.E. 58-1, 58-2. Among the transactions ostensibly comprising the basis for the claims are some involving foreign issuing banks in Mexico, Peru, Canada, France, Vietnam, South Africa, and other countries or dependencies or insular possessions of the United States. D.E. 1, p. 7, 58-1, 58-2. Nothing in Defendants' Notice of Removal, Response to Motion to Remand, or other documents in the record indicates that the foreign components of these otherwise domestic transactions or the foreign status of participating banks are the matters from which Speedy Stop's claims arise.

---

[1] http://www.occ.treas.gov/topics/licensing/national-bank-lists/national-by-name-pdf.pdf. Incidentally, HSBC Bank (USA), N.A. is further identified as a federally-chartered bank in *Bayerische Landesbank v. HSBC Holdings plc*, No. 13 Civ. 3906(AT), 2013 WL 6144762 (S.D.N.Y. Nov. 18, 2013).

In other words, the offshore transaction components of the allegedly triggering transactions are not the subject of this case. The involvement of any foreign banks is fortuitous and legally insignificant to Speedy Stop's lawsuit. The three-part nexus required by *AIG* is missing, leaving this action outside the constitutional boundaries of this Court's federal Edge Act removal jurisdiction. *See Landesbank Ba-Den–Württemberg v. Capital One Financial Corp.*, No. 12 Civ. 5907(MGC), --- F.Supp.2d ---, 2013 WL 3743161 (S.D.N.Y. July 17, 2013) (finding the involvement of a foreign transaction fortuitous with respect to the matters placed in issue by the case, thus being insufficient to satisfy the third requirement of Edge Act removal); *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397(LTS)(HBP), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012) (finding a lack of a direct nexus between the federally chartered bank and the foreign transaction, stating that the defendant's conduct at issue had no international dimension, the involvement of foreign entities was fortuitous, and that the foreign transaction involvement was too attenuated to support Edge Act jurisdiction).

The *Pinto* case, addressed by both sides in this dispute, espoused a liberal reading of the Edge Act that, in this Court's analysis, does not survive the *AIG* holding. *Pinto v. Bank One Corp.*, No. 02 Civ.8477 NRB, 2003 WL 21297300 (S.D.N.Y. June 4, 2003). Even in *Pinto*, however, Edge Act removal was considered to require that the offshore banking or financial transaction—regardless of how incidental—be "legally significant" to the issues in the case. *See also, Lazard Freres & Co. v. First Nat'l Bank*, 91 Civ. 0628(KMW), 1991 WL 221087, 1991 U.S. Dist. LEXIS 14665, at *3 (S.D.N.Y. Oct. 15, 1991) (requiring 3-part nexus); *Telecredit Serv. Ctr. v. First National Bank*, 679 F.Supp.

1101, 1104 (S.D.Fla. 1988) (rejecting Edge Act jurisdiction over Visa/MasterCard case involving a complaint regarding chargebacks; the fact that the transactions involved a foreign good or service was insufficient to confer federal jurisdiction over the contract dispute between domestic parties). Here, the allegedly foreign component of a portion of the transactions is not legally significant to the antitrust allegations.

The petition further complains of Defendants HSBC Bank, plc, HSBC Holdings, plc, and Barclays Bank, plc, all of which are banks operating under the laws of the United Kingdom, who allegedly serve on the global or international boards of MasterCard or Visa. D.E. 1, p. 8. Defendants offer this status of the parties as additional grounds for Edge Act removal. Again, while these are foreign banks, there is an insufficient nexus with an offshore banking or financial transaction with legal significance to support Edge Act jurisdiction under *AIG*.

## CONCLUSION

For the reasons set out above, the Court holds that Speedy Stop's well-pleaded Complaint (D.E. 1-2) does not support removal under the Edge Act and remand is thus required. Alternatively, the Court notes that Speedy Stop has filed its First Amended Complaint (D.E. 29) dismissing the parties that are foreign banks or that have been identified as federally-chartered corporations associated with purchases processed in part through foreign banks and further limiting the request for damages to claims regarding fees charged with respect to domestic transactions. In recognition of that change in the pleading, the Court exercises its discretion and remands the case under *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) (allowing discretionary remand based on

judicial economy, convenience, fairness, and comity).

The Court GRANTS the Motion to Remand (D.E. 30) and REMANDS this action to the 24th Judicial District Court, Victoria County, Texas, the court from which it was removed.

ORDERED this 26th day of December, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE